OPINION
{¶ 1} Defendant, Billy Reynolds, appeals from his conviction and sentence for abusing harmful intoxicants, which were entered on a guilty verdict returned after a trial by jury.
{¶ 2} The evidence demonstrates that on the morning of October 22, 2002, Defendant's mother, America Reynolds, discovered Defendant in her garage. Ms. Reynolds smelled paint fumes. There had been no odor of paint in the garage before Ms. Reynolds discovered Defendant there that morning. And, although she didn't keep any silver paint in her garage, Mrs. Reynolds observed silver paint spilled or sprayed across a desk and some other items. Ms. Reynolds had not asked Defendant to paint anything, and she did not see anything that had been painted, except the desk on which silver paint was spilled. She was aware of no legitimate reason why Defendant would have used silver paint in that garage that morning.
{¶ 3} Defendant's speech was slurred, and Ms. Reynolds was concerned because Defendant has a history of sniffing or "huffing" paint. Ms. Reynolds discovered wine bottles in her garage and she suspected that Defendant might have been drinking as well as huffing paint. Ms. Reynolds asked Defendant to leave. When he didn't leave, she called police. Defendant then left. Ms. Reynolds observed Defendant walking briskly through a field behind her home.
{¶ 4} Officers David Yaney and Natalie Heckman responded to Ms. Reynolds' call. They went directly to a wooded area behind Ms. Reynolds' home, because Officer Yaney, who had prior experience with Defendant, knew that Defendant often goes there. When the officers found Defendant he was holding a can of silver spray paint in his hand When he dropped the can officers discovered that the nozzle on the can was missing and the can had a hole in its side. Wet paint was dripping from the can, some of which fell onto Officer Yaney's shoe.
{¶ 5} There was silver paint on Defendant's fingers and a strong odor of paint fumes coming from his person. Defendant had glassy eyes, slurred speech, and difficulty standing, conditions consistent with Officer Yaney's previous observations of people who are found huffing paint. The officers did not, however, smell any alcohol on Defendant. Neither did the officers observe any silver paint around Defendant's nose or mouth, or on his clothing. No rag or paper bag, which is typically used by persons huffing paint, was found near Defendant.
{¶ 6} Officer Yaney arrested Defendant for abusing harmful intoxicants. By the time the officers walked Defendant back to their police cruiser, the wet paint in the can had dried up.
{¶ 7} Defendant was indicted on one count of Abusing Harmful Intoxicants. R.C. 2925.31(A). The case proceeded to a jury trial. Expert witnesses for both the State and Defendant examined the can of silver spray paint recovered from Defendant by police. No harmful intoxicants were in that can at the time of their respective examinations. However, one of the ingredients listed on the can, toluene, is a harmful intoxicant. Both experts agreed that had the can been intact and had it contained the ingredients listed on it, the spray paint can would have contained a harmful intoxicant. They also agreed that, once the can was punctured, toluene, which is a solvent, would rapidly escape into the air and evaporate very quickly. The experts could not determine when the can of spray paint was punctured.
{¶ 8} At the conclusion of trial the jury found Defendant guilty. The trial court sentenced Defendant to five years of community control sanctions.
{¶ 9} Defendant has timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
{¶ 10} "The trial court erred to appellant's prejudice when it entered judgment of guilt where such judgment was against the manifest weight of the evidence."
SECOND ASSIGNMENT OF ERROR
{¶ 11} "The trial court erred to appellant's prejudice by overruling defendant's Rule 29 motion for acquittal."
{¶ 12} In these assignments of error Defendant challenges the weight and sufficiency of the evidence.
{¶ 13} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
{¶ 14} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord:State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
{¶ 15} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
{¶ 16} Defendant was found guilty of obtaining, possessing or using a harmful intoxicant with purpose to induce intoxication. R.C. 2925.31(A). Defendant claims that his conviction is against the manifest weight of the evidence. Defendant points out that no one observed him huffing paint, that he had no silver paint around his nose or mouth or on his clothes, that no rags or bags commonly used for huffing paint were found by police, that no harmful intoxicants were found in the paint can when the can was tested, that no evidence was introduced showing when the paint can had been punctured, and that there is evidence which suggests that Defendant may have been intoxicated as a result of drinking alcohol.
{¶ 17} The State's case was largely circumstantial in nature, but circumstantial evidence and direct evidence have equivalent probative value. State v. Jenks (1991), 61 Ohio St.3d 259. The evidence in this case strongly suggests that the can of silver spray paint Defendant possessed had recently been punctured inside his mother's garage, that prior to being punctured the can contained a harmful intoxicant, toluene, and that Defendant's intoxicated state was caused by sniffing the paint from the can, not by drinking alcohol. The testimony of Officers Yaney and Heckman that when they found Defendant he had a can of silver spray paint that had wet paint dripping from the can, and concerning his condition when they found him, plus the testimony of the chemist as to the contents of that can of spray paint before it was punctured, plus the testimony of Defendant's mother regarding the condition of her garage when she discovered Defendant there, constitutes substantial, persuasive evidence of guilt that satisfies the Thompkins test.
{¶ 18} In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. The jury did not lose its way simply because it chose to believe, as it was entitled to do, the State's theory of this case rather than Defendant's. Defendant's conviction is not against the manifest weight of the evidence.
{¶ 19} When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261. The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense. State v. Miles (1996), 114 Ohio App.3d 738.
{¶ 20} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply in such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
{¶ 21} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
{¶ 22} Defendant argues that the evidence presented by the State was insufficient to prove that he possessed or used a harmful intoxicant, or that he did so with a purpose to induce intoxication. We disagree. The evidence presented by the State previously discussed, if believed, is sufficient to prove that Defendant possessed or used a harmful intoxicant. From Defendant's intoxicated state, his purpose in possessing that material reasonably can be inferred.
{¶ 23} Viewing the evidence in this case in a light most favorable to the State, a rational trier of fact could find all of the essential elements of the offense, including Defendant's purpose, proved beyond a reasonable doubt.
{¶ 24} The first and second assignments of error are overruled.
THIRD ASSIGNMENT OF ERROR
{¶ 25} "The Trial Court erred to appellant's prejudice by overruling defendant's motion to strike testimony and motion for mistrial."
{¶ 26} Defendant argues that the trial court abused its discretion when it overruled his motion to strike/motion for mistrial made after Officer Yaney had testified concerning statements made by Defendant that were not disclosed to defense counsel through discovery.
{¶ 27} The decision whether to grant or deny a mistrial is a matter within the trial court's sound discretion. State v. Garner,74 Ohio St.3d 49, 1995-Ohio-168. The same standard applies to the trial court's decision whether to admit or exclude evidence. State v. Sage
(1987), 31 Ohio St.3d 173. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court.State v. Adams (1980), 62 Ohio St.2d 151.
{¶ 28} The prosecutor asked Officer Yaney in his direct examination whether there was anything unusual about the Defendant's speech when police encountered him. Officer Yaney replied: "He had kind of a slurred speech, and he kept telling me how I couldn't charge him with anything because the nozzle was broke off the can and there was a hole in the can and I didn't have . . ." Defense counsel objected and moved to strike or, in the alternative, for a mistrial, arguing Defendant's incriminating statement had not been disclosed to the defense during discovery, as Crim.R. 16(B)(1)(a) requires. Defense counsel argued that the police report he received during discovery indicated only that Defendant had made such statements to police during a previous encounter with them. The trial court overruled Defendant's motion to strike/motion for a mistrial.
{¶ 29} Defendant's objection was based upon a claimed discovery violation. However, the record demonstrates that during discovery Defendant was provided with a copy of the police report containing the statement by Defendant to which Officer Yaney referred in his testimony at trial. Thus, Defendant clearly had notice and was made aware of his statement to police. To the extent the police report may have been unclear or garbled concerning when Defendant's statement was made, whether during the October 22, 2002 incident or during some previous encounter, Defendant has a responsibility to investigate and resolve that issue before trial.
{¶ 30} If, as the State claims, it was not until Officer Yaney testified at trial that the parties learned that the statement to which the police report referred was in fact not made by Defendant during the October 22, 2002 incident, then clearly there was no willful failure by the State to disclose that statement. On this record we see no discovery violation, and nothing even remotely approaching an abuse of discretion on the part of the trial court in denying Defendant's motion for a mistrial.
{¶ 31} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
{¶ 32} "The appellant was prejudiced by the misconduct of the prosecuting attorney when he falsely stated the evidence to be adduced at trial in opening statements and mischaracterized the evidence which was adduced at trial in closing statements."
{¶ 33} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Bey, 85 Ohio St.3d 487, 493,1999-Ohio-283. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor.
{¶ 34} Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. Maggio v. Cleveland (1949),151 Ohio St. 136; State v. Ballew, 76 Ohio St.3d 244, 1996-Ohio-81. A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. State v. Lott (1990), 51 Ohio St.3d 160, 165. In determining whether the prosecutor's remarks were prejudicial, the State's argument must be viewed in its entirety. Ballew, supra.
{¶ 35} At the outset we note that Defendant failed to object to any of the statements he now claims on appeal were prosecutorial misconduct. Thus, Defendant has waived all but "plain error." Ballew, supra. Plain error does not exist unless but for the error, the outcome of the trial clearly would have been otherwise. State v. Moreland (1990),50 Ohio St.3d 58.
{¶ 36} Defendant claims that the prosecutor misstated the expected testimony during opening statements when he told the jurors that Defendant's mother would tell them that when she saw Defendant on October 22, 2002, "he had a strong odor of paint on his person." When Defendant's mother, America Reynolds, testified at trial she did not say that Defendant had an odor of paint coming from his person. Rather, she indicated that she smelled paint in her garage, which is where she found Defendant.
{¶ 37} An examination of this record in its entirety satisfies us that the prosecutor's misstatement was not made in bad faith. This record shows that Ms. Reynold's testimony at trial differed in some respects from what she told prosecutors when she met with them a few weeks before trial. It is entirely plausible, that based upon Ms. Reynolds' conversation with prosecutors before trial, they reasonably believed and expected her to testify that she smelled paint on Defendant's person. Moreover, Defendant was not unduly prejudiced by the prosecutor's misstatement. Defendant had ample opportunity to correct any misunderstanding when his mother was cross-examined, as well as to exploit the prosecutor's misstatement in his own closing argument.
{¶ 38} Defendant claims that the prosecutor misstated the evidence during opening statement when he told the jurors that Mike Wathen, a forensic chemist, would tell them about the chemical makeup of spray paint and that "the spray paint in this case was a harmful intoxicant." According to Defendant, both the State's and Defendant's expert testified that by the time they examined the can of spray paint police recovered from Defendant, that can did not contain any harmful intoxicants.
{¶ 39} Both parties' experts testified that the can of spray paint had a hole in it, and therefore the solvents such as Toluene that were inside that can, would quickly disperse into the air and evaporate rapidly. Both experts agreed that the ingredients listed on that can of spray paint included toluene, a harmful intoxicant, and that if the can had been intact it would have contained a harmful intoxicant. The prosecutor did not misstate the evidence.
{¶ 40} With respect to closing arguments, while reviewing the evidence that Defendant was not using or spraying paint in his mother's garage on October 22, 2002 for any legitimate purpose but rather to induce intoxication, the prosecutor stated: "Ms. Reynolds also told you that she never asked Defendant to paint anything, and she told you that nothing was painted." In light of evidence adduced by the defense that a number of items in Ms. Reynolds' garage, including a statue, had silver paint on them, and that at some earlier time Defendant had painted that statue black, Defendant argues that the prosecutor's comment misstated the evidence. We disagree. Ms. Reynolds testified that except for the silver paint spilled over a desk in the garage "nothing else had been painted" pertained only to what had occurred on that day, October 22, 2002, not at some earlier time. The prosecutor's comment did not misstate the evidence.
{¶ 41} Additionally, during closing argument the prosecutor stated:
{¶ 42} "What happened when Miss Reynolds said, `You have to leave, I'm calling the police'? [Defendant] takes off running. Why does he run? Why does he run? Think about that. That goes to what his purpose was in what he was doing that day."
{¶ 43} Defendant complains that this comment misstates the evidence because no witness testified they saw Defendant running.
{¶ 44} Ms. Reynolds testified that when she saw Defendant going through the field behind her house "he was kicking up the hill pretty fast out there." More importantly, the real significance of the prosecutor's comment was not directed to how fast Defendant had left his mother's house but, rather, when he left. The timing of his departure supports a reasonable inference that Defendant may have been engaged in illegal activities and left as he did before police arrived to avoid apprehension. Once again we see no misstatement of the evidence.
{¶ 45} The instances of misconduct about which Defendant complains involve interpretation of and fair comment upon the evidence presented. None bespeak a purposeful misstatement or falsification of evidence which corresponds to misconduct. More importantly, none of the comments are such that but for the comment the outcome of Defendant's trial would clearly have been different. No plain error has been demonstrated.
{¶ 46} Finally, and while we are aware of appellate counsel's duty to represent his client's interests zealously, we urge defense counsel to avoid misuse of prosecutorial misconduct claims. Error is not necessarily misconduct. Indeed, most error is not. In this context, only if a prosecutor's arguments grossly misstate the evidence and he or she persists in the practice should the claim be made. There is an element of perversity in the claim that mere exaggerations, or even negligent misstatements, simply don't involve. Prosecutorial misconduct, like ineffective assistance of counsel, necessarily involves an attorney's failure to conform to clear professional standards. These particular claims might more properly have been made as ineffective assistance of counsel, for trial counsel's failure to object. However, even then they would fail for a lack of prejudice. Our point, however, is that in either event the claims should be made with reticence.
{¶ 47} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, P.J. and Young, J., concur.