JOURNAL ENTRY and OPINION
{¶ 1} Paul Washington ("Washington") appeals the trial court's rulings allowing testimony of his and his co-defendant's statements, and not severing his trial from his co-defendant's trial. Washington argues that the State's actions violated the rules of discovery and his fifth and sixth amendment rights. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} On September 29, 2004, victims Evelyn Martin, Terri Carruthers and David Sandifer (collectively referred to as the "victims") were playing cards at victim Martin's residence, 3075 E. 130th Street. While the victims were playing cards, two men entered the residence brandishing guns and threatening the victims. One man hit victim Martin in the face with his gun and forced her to sit down. The two men searched all the victims and then proceeded to ransack the house, searching for money and valuables. The two men continuously threatened the victims while they were inside the house.
 {¶ 3} After the two men left, the victims called 911. Victim Martin identified Washington as one of the gunmen but could not identify his indicted co-defendant, Leshawn Shutes ("Shutes"). Victim Carruthers identified Shutes but stated that Washington was not present at the time of the offense. Victim Sandifer identified Washington as the male who held a gun to victim Martin's face.
 {¶ 4} When the two assailants left victim Martin's residence, Detective Sims ("Sims") observed their actions. Sims was in the area on an unrelated matter when he observed Washington back a vehicle into victim Martin's residence. He also observed two men exit the vehicle, enter the residence and then run from the residence into the vehicle a short time later. Sims observed Washington pull away from the residence and began pursuing the vehicle in his unmarked police vehicle. Other officers became involved and activated their overhead lights but Washington refused to pull over. The chase ended when Washington crashed the vehicle, but not before Washington allowed three men to exit the vehicle and flee the scene.
 {¶ 5} Sims read Washington his Miranda rights, and Washington requested an attorney. Washington told Sims that he would not give a written statement without an attorney. Nonetheless, Washington told Sims the street names of two passengers and the real name of the third passenger, Leshawn Shutes. Officers then transported Washington to the police station and again, informed him of his Miranda rights. At the police station, Washington told Sims he did not know that the passengers in the vehicle were going to commit a robbery and that he stayed inside the vehicle at all times. He also stated that when he drove away from the residence, the three passengers threw a gun out the window and then fled from the area. Washington told officers where they could find the gun, and police officers successfully recovered a handgun from the described area.
 {¶ 6} After learning Shutes' name, officers located him and placed him under arrest. While in custody, Shutes told Sims that he knew Washington had told on him. He then stated that it was Washington's idea to commit the robbery and that Washington rounded up all three passengers for the purpose of committing the robbery. Sims never had Washington or Shutes execute a written waiver of their fifth amendment rights, nor did he ever record or transcribe Washington or Shutes' statements.
 {¶ 7} A Cuyahoga County grand jury returned an indictment against Washington charging him with three counts of aggravated robbery with one- and three-year firearm specifications, three counts of aggravated burglary with one- and three-year firearm specifications, three counts of kidnapping with one- and three-year firearm specifications, one count of failure to comply with order or signal of police officer and one count of having a weapon while under disability. All counts but failure to comply with order or signal of police officer and having a weapon while under disability contained notice of prior conviction and repeat violent offender specifications. Washington and Shutes pleaded not guilty, waived their right to a jury trial and the State proceeded against both defendants.
 {¶ 8} The trial court originally scheduled the trial for March 9, 2005. However, on that date, defense counsel for Washington and Shutes learned that each defendant had made oral statements to Sims. Neither party received discovery concerning these statements. The trial court instructed the State to hand over any discovery relating to the statements and continued the trial for a later date.
 {¶ 9} On March 28, 2005, the trial began. At that time, neither Washington's nor Shutes' attorneys received any discovery concerning their clients' statements to Sims. On March 29, 2005, Sims testified and reiterated what both Washington and Shutes told him after their arrests. Both Washington's and Shutes' attorneys objected to the testimony. Following Sims' testimony, the State called Sergeant Mone ("Mone"), an officer whose name was not included on the State's witness list. Over objection, Mone testified that Washington told him that the passengers in the vehicle threw a weapon out the window.
 {¶ 10} After the conclusion of the evidence, Washington's counsel moved the court to grant a judgment of acquittal as to all twelve counts. The trial court granted the motion as to the charge of having a weapon while under disability but denied the motion as to all other charges. The trial court, using the complicity statute, found Washington guilty of the three counts of aggravated burglary with the notice of prior conviction and repeat violent offender specifications deleted and one count of failure to comply with order or signal of police officer. The trial court found Washington not guilty of the remaining charges and not guilty of all one and three-year firearm specifications. The trial court sentenced Washington to a total prison term of three years and one-year community control, sanctions to begin upon completion of the prison term.
 {¶ 11} Washington appeals, raising the two assignments of error contained in the appendix to this opinion.
 {¶ 12} In his first assignment of error, Washington argues that the trial court erred when it allowed into evidence his and Shutes' oral statements. This assignment of error lacks merit.
 {¶ 13} Washington first argues that the State violated the rules of discovery when it failed to provide his oral statement until the second day of trial. This argument is erroneous.
 {¶ 14} Criminal Rule 16 requires each party to provide allowed discovery, including statements of a defendant and co-defendant, upon request. When there is a discovery violation, the trial court has the discretion to fashion an appropriate remedy. Crim.R. 16(E)(3); State v. Scudder, 71 Ohio St.3d 263,1994-Ohio-298. An appellate court must review a trial court's actions regarding alleged discovery violations under an abuse of discretion standard. State v. Parsons (1983), 6 Ohio St.3d 442. "An abuse of discretion * * * implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court." Statev. Reynolds, Montgomery App. No. 19780, 2003-Ohio-7245.
 {¶ 15} In the present case, all parties learned of Washington's and Shutes' statements on March 9, 2005. At that point, the trial court instructed the State to hand over all discovery concerning the statements forthwith. However, it was not until the second day of trial that Washington's and Shutes' attorneys learned the contents of their clients' oral statements. The State claimed that it never had written copies of either Washington's or Shutes' statements and that it was not fully aware of the contents of the statements until trial commenced. Additionally, the State argues that it allowed Washington's and Shutes' attorneys to speak with Sims prior to trial and ask any questions they deemed necessary.
 {¶ 16} After hearing from the State and the defense counsels, the trial court noted the parties' objections but allowed Sims to testify to both Washington's and Shutes' statements. In allowing the testimony, the trial court noted that this was a bench trial and as the trier of fact, it would use the information appropriately.
 {¶ 17} After reviewing the evidence, this court fails to see how Washington could have been surprised by the oral statements. Washington's counsel had every opportunity to speak with his client about the oral statement he made to Sims. Additionally, counsel had been aware since March 9, 2005 that Shutes had also made an oral statement and counsel had an opportunity to question Sims regarding the oral statement before trial.
 {¶ 18} Given that "a trial court must impose the least severe sanction for a discovery violation that is consistent with the purposes of the rules of discovery, we find no abuse of discretion." State v. Macias, Darke App. No. 01CA1553, 2002-Ohio-2161. Moreover, "where, in a criminal trial, the prosecution fails to comply with Crim. R. 16(B)(1)(a)(ii) * * * and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted." Parsons, supra, at syllabus.
 {¶ 19} Here, there was no evidence of a willful discovery violation by the State. Moreover, Washington has not argued that the outcome would have been different had the trial court not allowed in the evidence, nor did he move for a mistrial. For these reasons, we find that the trial court did not abuse its discretion by admitting into evidence Washington's and Shutes' oral statements.
 {¶ 20} Washington also argues that the admission of his statement violated his fifth amendment right to remain silent. The basis of this argument is that had the State provided Washington's oral statement prior to trial, he could have moved to suppress any statements based on a Miranda violation. This argument is without merit.
 {¶ 21} Primarily, there is nothing that prevented Washington's counsel from orally moving to suppress the statements, something counsel did not do. Moreover, Washington's argument presupposes that had the State provided the oral statement prior to trial, trial counsel would have filed a motion to suppress. There is no evidence in the record to show that the oral statements would have been suppressed. Additionally, we have previously found that the State did not willfully commit a discovery violation. Accordingly, this argument is without merit.
 {¶ 22} Washington's first assignment of error is overruled.
 {¶ 23} In his second assignment of error, Washington argues that the trial court erred when it denied his motion for a separate trial. This assignment of error lacks merit.
 {¶ 24} Primarily, this court notes that Washington never moved for a separate trial. Nonetheless, this court will address Washington's argument that the trial court violated his Sixth Amendment right to cross-examination when it allowed in Shutes' oral statement.
 {¶ 25} The United States Supreme Court held in Bruton v.United States (1968), 391 U.S. 123, 126, 88 S.Ct. 1620, that the admission of a co-defendant's statement without the opportunity for cross-examination violates the Confrontation Clause of the Sixth Amendment.
 {¶ 26} In the present case, the challenged statements were both from police interrogations and as such, they fall under theBruton rule. State v. Whitlow, Cuyahoga App. No. 84294, 2005-Ohio-4005. However, to be the basis for reversible error, "the admission of the testimony must have been so prejudicial as to have affected the outcome of the case." Whitlow, supra. The Ohio Supreme Court in State v. Moritz (1980),63 Ohio St.2d 150, 156-157 held:
"Our conclusion that appellant was implicated in these two instances contrary to his right of confrontation does not, however, mean that his conviction is to be automatically reversed. The line of cases following Bruton have firmly established that an error of this sort may be harmless. InSchneble v. Florida (1972), 405 U.S. 427, 430, 31 L.Ed.2d 340,92 S.Ct. 1056, the Supreme Court declared:
"The mere finding of a violation of Bruton rule in the course of trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." (Citations omitted).
 {¶ 27} In the present case, Washington waived his right to a jury trial and elected to have his case tried by the bench. "The Ohio Supreme Court has noted that when a judge hears evidence `in a bench trial, the court must be presumed to have `considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" Whitlow, supra; State v. Post (1987),32 Ohio St.3d 380, 384.
 {¶ 28} In the challenged statement, Shutes claims that Washington initiated the robbery and rounded up himself and two others to commit the crime. Though this statement implicates Washington in the crime that occurred on September 29, 2004, the State presented sufficient other evidence to allow the trier of fact to conclude Washington's guilt. Specifically, Sims testified that he observed Washington back into the driveway of victim Martin's house, wait in the driveway while two men exited his vehicle and entered the residence and then pull off when the two men ran from the residence. Additionally, the victims identified Shutes as one of the attackers who entered victim Martin's residence.
 {¶ 29} Finally, when issuing its verdict, the trial court gave its reasons for the conviction. Specifically, the trial court noted the testimony of victims Martin and Sandifer lacked credibility while the testimony of victim Carruthers did not. Noting that victim Carruthers specifically identified Shutes as the man who entered victim Martin's residence, the trial court found Washington guilty pursuant to the complicity statute.
 {¶ 30} For the abovementioned reasons, Washington's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Karpinski, J., concur.
 Appendix A Assignments of Error:
 "I. The trial court erred when it overruled the objection bythe defense to the admission of the testimony by the state'spolice witnesses the content of which was the statements made bythe defendant-appellant and his co-defendant.
 II. The trial court erred when it denied the motion of theappellant-defendant for a separate trial."