OPINION
{¶ 1} Dwayne C. Jones was convicted of driving under suspension after a bench trial in the Kettering Municipal Court. The trial court sentenced him to serve 30 days in jail, 27 of which were suspended, and to pay a fine of $500, of which $350 was suspended. Jones appeals from his conviction, arguing that his conviction was based on insufficient evidence and was *Page 2 
against the manifest weight of the evidence.
 {¶ 2} The evidence presented at trial reveals the following facts.
 {¶ 3} At approximately 1:05 p.m. on June 9, 2006, Jones was involved in a single-car accident in front of 3380 Soldier's Home-West Carrollton Road in Moraine, Ohio. The car — a maroon Chevy Impala owned by Jones's wife — crossed the center line, hit a utility pole, and stopped in the berm, with the driver's side door blocked by the woods and trees along the road. The driver's side air bag deployed during the accident; the passenger side air bag did not deploy.
 {¶ 4} Christopher Dewey, who was visiting his grandparents' house at 3380 Soldier's Home-West Carrollton Road, heard "a big boom and crunch" and ran approximately thirty feet to the edge of the road. Dewey observed Jones climb from the driver's seat to the passenger seat and then out the passenger side of the vehicle. Dewey observed Jones talk on his cellular telephone right after he got out of the car. Dewey ran to the house to get his grandfather, continuously looking back at the crash site. Dewey and his grandfather then returned to the edge of the road. During this time, Dewey did not observe any other individuals around the vehicle. Dewey stated that he did not think another person could have gotten out of the car and left the scene without being seen by him.
 {¶ 5} Approximately thirty seconds after the crash, Five Rivers Metroparks Ranger Kenneth Becker encountered the accident scene. Becker testified that Jones was the only individual on the roadway when he arrived. Becker also saw residents of 3380 Soldier's Home-West Carrollton Road standing beside the roadway. At that time, Jones was talking on his cellular telephone. Dewey and Becker both testified that Jones spoke on the telephone for approximately three minutes. Afterward, Becker spoke with Jones and asked if he was injured. *Page 3 
Becker then contacted the dispatcher. During the investigation of the crash, Becker asked Jones if he was driving the vehicle. Jones told Becker that his wife had been driving and that she had left on foot to go to her sister's house.
 {¶ 6} A few minutes after the accident occurred, Officer Gerald Weidner of the Moraine Police Department arrived. Weidner initially spoke with Becker and then went to talk to Jones, but Jones was still talking on his cell phone. After Jones finished his telephone conversation, he told Weidner that his wife had been driving the vehicle.
 {¶ 7} According to Weidner, in a Chevy vehicle, an airbag will deploy if a person weighing 85 pounds or more is in a seat, unless there is a turn-off switch. Weidner looked for a turn-off switch in the Impala but did not find one. Weidner further testified that, based on the damage to the Impala, the passenger side airbag should have deployed if Jones was the passenger; Jones weighed more than 85 pounds. Weidner determined that Jones had been driving the vehicle, and he began to prepare a citation. The state's records indicated that Jones' s driver's license was under suspension at the time of the accident.
 {¶ 8} Approximately 15-20 minutes after the accident, Jones's wife walked up to the accident scene. She informed the officers that she had been driving the vehicle. She explained that she had left on foot to go to her sister's home.
 {¶ 9} Jones testified in his defense that his wife was driving the vehicle, and that she had fallen asleep at the wheel. According to Jones, as the accident was occurring, he reached over to grab the wheel and then the airbag went off. Jones supposed that his airbag did not deploy because he was leaning across his wife's seat when the accident occurred. Jones stated that he and his wife were bruised by the airbag. Jones testified that, after the accident, Mrs. *Page 4 
Jones got into a vehicle driven by her brother-in-law, Albert Gibson, who was driving behind them. Gibson took Mrs. Jones to his home at 2750 Soldier's Home-West Carrollton Road because her nose was bleeding and she wanted to use the bathroom. Jones testified that he called his sister to ask her to get his wife back to the scene. Jones told Becker that his wife was driving, and that she had gone up the street and would be right back. Jones testified that Becker arrived eight to ten minutes — not thirty seconds — after the accident. Jones acknowledged that his driver's license was under suspension at the time of the accident.
 {¶ 10} On June 12, 2006, Jones was charged with driving under suspension, having an expired license, and failure to control. A trial was held on August 25, 2006. The court found Jones guilty of driving under suspension but not guilty of the other charges. On September 8, 2006, the trial court sentenced him accordingly.
 {¶ 11} In his first assignment of error, Jones claims that his conviction was based on insufficient evidence, because the state failed to establish that he was driving the vehicle. He states: "The only evidence offered by the prosecution was that no one was seen driving the vehicle. The prosecution requires an inference that Appellant was driving the vehicle simply because he was the only person at the scene when the witnesses arrived. In fact, the only witness who saw the Appellant in or about the vehicle was the fifteen-year-old whose testimony was contradictory, stating `he was climbing from the driver seat to the passenger seat coming out.' (Tr. p 24) All of the persons present at the time of the crash testified that Appellant was not driving. Accordingly, there is insufficient evidence to sustain the conviction."
 {¶ 12} When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have *Page 5 
found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372,683 N.E.2d 1096, citing Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 13} Upon review of the evidence, we have little difficulty finding sufficient evidence that Jones was driving the Impala. Dewey testified that he heard the crash and ran to the scene. He stated that he had been approximately thirty feet away, and that it took five to ten seconds to get there. When he arrived, he saw Jones climbing from the driver's seat to the passenger's seat to get out of the car. He did not see Mrs. Jones on the road, which is long and straight. Becker arrived approximately thirty seconds later, and Weidner arrived shortly thereafter. Neither Becker nor Weidner saw Mrs. Jones until she walked up to the crash approximately fifteen to twenty minutes later. Construing the evidence in favor of the state, there is strong circumstantial evidence that Mrs. Jones was not in the vehicle and that Jones was the driver, despite Jones's testimony to the contrary.
 {¶ 14} The fact that the state's evidence is circumstantial, rather than direct, is irrelevant. Circumstantial evidence and direct evidence have equivalent probative value. State v. Jenks (1991),61 Ohio St.3d 259, 272, 574 N.E.2d 492; State v. Reynolds, Montgomery App. No. 19780,2003-Ohio-7245, ¶ 17. Consequently, a defendant may be convicted solely on the basis of circumstantial evidence. State v. Nicely (1988),39 Ohio St.3d 147, 529 N.E.2d 1236. In fact, we have noted that circumstantial evidence is often more persuasive than direct evidence. State v.Reed, 155 Ohio App.3d 435, 2003-Ohio-6536, 801 N.E.2d 862, ¶ 56; see, also State v. Jackson (1991), 57 Ohio St.3d 29, 38, 565 N.E.2d 549
("circumstantial evidence may be *Page 6 
more certain, satisfying, and persuasive than direct evidence.").
 {¶ 15} The first assignment of error is overruled.
 {¶ 16} In his second assignment of error, Jones claims that his conviction is against the manifest weight of the evidence.
 {¶ 17} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 18} On appeal, Jones argues that Dewey's testimony should not have been credited. He states:
 {¶ 19} "[Dewey's] testimony is not credible simply because his timing can't be *Page 7 
believed and the fact that he stated he never looked away from the scene. He testified that he was only down at the street for five or ten seconds before returning to his house to retrieve his Grandfather. He even admits that he was gone for a period of time when he went back to the house. He stated that he had never seen Appellant's wife before, yet all of the other witnesses testified that she was on the scene at some point. The police officer and the park ranger both testified that they came upon the accident scene after it had transpired and that no one was in the vehicle upon their arrival. The Appellant, on the other hand, testified that his wife was driving, not Appellant. Based upon the testimony, it is clear that the State did not prove beyond a reasonable doubt that the Appellant was driving when no one saw him driving, and all of the people present at the time of the crash [Jones and Mrs. Jones] say he was not driving."
 {¶ 20} We find no fault with the trial court's decision to credit Dewey's testimony. As acknowledged by Jones, the trial judge "is the sole judge as to the credibility of the witnesses." Although Dewey testified that he did not see Mrs. Jones at any time, the trial court could have reasonably credited that he heard the crash — particularly considering Jones's and Becker's testimony that the horn was blaring — and that he had immediately come to the crash site. Dewey indicated that he had watched Jones as he returned to the house and "kept looking back." Dewey stated that he did not go into the house, because his grandfather was coming out when he got there. The two then went back to the crash site together. Although none of the state's witnesses observed the crash itself, the trial court could have reasonably believed Dewey's testimony that he observed Jones within ten seconds of the crash, that Dewey *Page 8 
continued to observe Jones while he got his grandfather, and that Becker and Weidner arrived shortly thereafter. The trial court was free to credit Dewey's, Becker's and Weidner's testimony that they did not observe Mrs. Jones when they came to the crash site. The trial court's conclusion that Jones had been driving was reasonable in light of the state's circumstantial evidence. Although the trial court could have instead credited Jones's assertion that his wife had been driving, it was not required to do so. Jones's conviction was not against the manifest weight of the evidence.
 {¶ 21} The second assignment of error is overruled.
 {¶ 22} The judgment of the trial court will be affirmed.
GRADY, J. and GLASSER, J., concur.
(Hon. George M. Glasser retired from the Sixth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1